**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| DONNA J. DONAHUE, | ) |
| | ) CASE NO.   3:10-cv-2298 |
| Plaintiff, | ) |
| | ) JUDGE ZOUHARY |
| v. | ) |
| | ) MAGISTRATE JUDGE VECCHIARELLI |
| MICHAEL J. ASTRUE, | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| | ) REPORT AND RECOMMENDATION |
| Defendant. | ) |

This case is before the magistrate judge on referral.  Plaintiff, Donna J. Donahue ("Donahue"), challenges the final decision of the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying Donahue's application for a period of Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) ("the Act").  This court has jurisdiction pursuant to 42 U.S.C. § 405(g).  For the reasons set forth below, the opinion of the Commissioner should be AFFIRMED.

I.  Procedural History

Donahue filed an application for DIB on February 7, 2006, alleging disability as of December 31, 2003.  Her application was denied initially and upon reconsideration. Donahue timely requested an administrative hearing.

Administrative Law Judge Jeffrey Griesheimer ("ALJ") held a hearing on February 20, 2009.  Donahue, represented by counsel, testified on her own behalf at

the hearing. The ALJ issued a decision on March 4, 2009, in which he determined that Donahue is not disabled. Donahue requested a review of the ALJ's decision by the Appeals Council. When the Appeals Council declined further review on August 6, 2010, the ALJ's decision became the final decision of the Commissioner.

Donahue filed an appeal to this court on October 8, 2010. Donahue alleges that the ALJ erred in assessing her Residual Functional Capacity ("RFC") because the ALJ failed to assign appropriate weight to the opinion of Donahue's treating physician. Donahue contends, therefore, that the ALJ's assessment of her RFC is not supported by substantial evidence. The Commissioner denies that the ALJ erred.

## II. Evidence

*A.     Personal and Vocational Evidence*

Donahue was born on May 24, 1969 and 39 years old on the date of the ALJ's decision. She has a 10th grade education in learning disabled classes. Her past relevant work includes cashier and general laborer, both at the light exertional level.

*B.     Medical Evidence*

On April 18, 2004, Donahue reported to the emergency room at Marion General Hospital complaining of stabbing pain to the right side of her chest. Transcript ("Tr."), pp. 109-10. The pain increased when breathing in and with movement. Donahue had a non-productive cough and some wheezing, but there was no shortness of breath or palpitations. Donahue also complained of pain in her arms and legs due to fibromyalgia. A series of tests produced normal results, and the treating physician diagnosed chest wall pain exacerbated by asthma. Donahue was given Naprosyn, advised to treat the chest wall with heat, and warned against any smoking. She was

2

discharged in good condition.

On July 22, 2004, Donahue visited Paramvir Bains, M.S., D.O. Tr. at 190-91. Donahue reported a medical history of asthma, fibromyalgia, and osteoarthritis but denied treatment by a pulmonologist or hospitalizations for asthma in the past five years. Donahue's lungs were clear bilaterally to auscultation and produced no wheezing. Dr. Bains detected no lower extremity edema or motor or sensory deficits.

Donahue again visited Dr. Bains in December 2004, complaining of asthma, low back pain, and osteoarthritis. Tr. 189. She noted she used the asthma drug Advair but had discontinued another asthma drug, Spiriva. Her physical examination was normal.

A December 21, 2004 x-ray of Donahue's lumbar spine produced normal results. Tr. at 205. On February 14, 2005, an MRI of the lumbar spins indicated possible facet fluid, but did not indicate any disc herniation, stenosis, or compression. Tr. at 202.

Dr. Bains prescribed a series of six physical therapy sessions for Donahue from December 2004 through March 2005 for lower back pain and spasms. Tr. at 111-14. Upon the conclusion of her sessions, Donohue rated her pain as 0 out of 100 and reported no tenderness or spasms. Her flexibility, however, was at about 60%, and she had slightly reduced strength.

On April 13, 2005, Donahue reported to Thomas Porter, M.D. upon referral from Dr. Bains. Tr. at 123-24. Donahue complained of pain in multiple regions but particularly in her lower back and bilaterally into her hips. The pain in her back was a constant aching with occasional stabbing pain, accompanied by frequent numbness and tingling bilaterally in her feet. Donahue reported that physical activity, such as lifting or standing, increased the pain and that lying down relieved it somewhat. She also

reported pain in her upper back, neck, wrists bilaterally, and knees bilaterally, all aggravated by activity. Donahue said that her pain had been present for about two years and was helped by tramadol. Donahue denied benefits from physical therapy. Examination found Donahue normal with the following exceptions: reported pain upon straight-leg raise to 40°; extremely limited range of motion in the lumbar spine accompanied by reported pain; and tenderness bilaterally to palpation in the lower back. Dr. Porter noted x-ray evidence of lower lumbar facet abnormalities and suggested lumbar facet syndrome and sensory neuropathy, although he found the etiology to be idiopathic. He recommended continued use of Ultram and facet joint injections.

On May 11, 2005, Donahue reported persistent lumbar-sacral pain of five on a scale of ten, consequent upon lumbar spondylosis and facet arthropathy. Tr. at 118, 121-22. Dr. Porter administered lumbar facet joint injections at right L2-3 through right L5-S1. On May 25, 2005, Dr. Porter administered lumbar facet joint injections at left L3-4 through L5-S1 and medial branch nerve blocks at left L4 through S1. Tr. at 19.

Donahue consulted with J. Blake Kellum, M.D., on October 10, 2005 upon referral from Dr. Bains for restless leg syndrome. Tr. at 131-32. Donahue reported feeling as though "someone is pulling my legs apart" when she lay down to go to sleep. Tr. at 131. She frequently felt a need to move or massage her legs and experienced a cramping sensation when she did not do these things. Donahue reported waking several times during the night and having difficulty sitting still for any length of time. She also said that she had problems with breathing shallowly or ceasing to breathe during sleep. An examination produced normal results. Dr. Kellum found Donahue's symptoms to be consistent with restless leg syndrome and prescribed Klonopin.

4

X-rays of Donahue's lumbar spine on February 7, 2006 found no abnormalities. Tr. at 147.

Donahue had an initial consultation with Saud Siddiqui, M.D., of the Marion Pain Clinic on April 3, 2006. Tr. at 233-34. Donahue complained of chronic upper and lower back pain which spread horizontally to both sides and into the hips. She denied numbness or tingling. Donahue described her pain as throbbing, shooting, stabbing, burning, and intense, with levels ranging from 3/10 to 9/10 and averaging 7/10. She stated that the pain was worse in the morning and evenings and was aggravated by exercise, walking, standing, lifting, and sitting for long periods of time. Heat and shower provided some relief, and medication relieved about 10% of the pain. She also reported that tramadol had given her about 75% relief from pain but that she was no longer taking that medication. She was then taking Neurontin, Zantac, Remeron, Mucinex, Klonopin, an albuterol inhaler, Advair, and Tylenol arthritis. Dr. Siddiqui described her medical history as including asthma, chronic bronchitis, bowel problems, gallbladder problems, fibromyalgia, arthritis in the toes and back, eczema, anemia, and intolerance to cold. He also noted that previous radiological studies had shown no abnormalities except mild facet fluid in the lumbar facet joints. A physical examination resulted in reported pain upon extension and found lumbarsacral flexion and tenderness bilaterally in the area of the sacroiliac joint area, the right gluteal muscles, and the throacolumbar spine. Dr. Siddiqui diagnosed chronic low back pain probably secondary to facet arthropathy and possible sacroiliitis and piriformis syndrome, especially on the right side.

On May 31, 2006, Dr. Myung Cho, a state agency reviewing physician,

completed a Residual Functional Capacity ("RFC") Assessment of Donahue. Tr. at 170-77. Dr. Cho assessed Donahue as suffering from no exertional, postural, manipulative, visual, or communicative limitations. He also found that her only environmental limitation was a need to avoid concentrated exposure to fumes, odors, dusts, gases, a poor ventilation. Dr. Cho also found no evidence of arthritis or fibromyalgia.

On July 11, 2006, Dr. Bains wrote the following on a prescription form: "Above patient is currently under medical management at this office, and with pain clinic for pain control/rehab with a disability start date of April 12, 2006 to indefinite." Tr. at 261.

In October 2006, November 2007, December 2007, June 2008, and July 2008, Dr. Siddiqui performed pulsed radio frequency ablation of the lumbar medial branches. Tr. 227, 214, 213, 251, 250. In April and September 2008, Dr. Siddiqui administered lumbar or thoracic medial branch blocks. Tr. 253, 248, 247.

On June 4, 2008, Gregory Salmi, M.D., a state agency reviewing physician, completed an RFC Assessment of Donahue. Tr. 237-44. This assessment took place after Donahue's application had been denied initially and upon reconsideration. Dr. Salmi opined that Donahue could lift 20 pounds occasionally and ten pounds frequently; stand and walk with normal breaks for a total of 6 hours in an 8-hour work day; sit with normal breaks for less than six hours in a normal work day; only occasionally climb ladders, ropes, or scaffolds and stoop; and avoid concentrated exposure to fumes, odors, dusts, gases, a poor ventilation. Dr. Salmi added the following:

> Initial determination of 05/10/06 found environmental limitation only, avoid concentrated dust, fumes, and odors. This was affirmed @ Reconsideration on 11/07/06. This was based pm a mpr,a; 12/04 lumbar x-ray, a normal 02/05 lumbar MRI, a 10/05 exam that found no evidence of nerve damage, muscle weakness and she had normal gait. An exam in 03/06 found her to be stable.

> Major problem of low back pain thought to be most probably mechanical secondary to facet arthropathy (mild facet fluid noted in lumbar facet joints). Since that time she has continued to be followed and treated for back pain. A variety of treatments have been tried with variable results. There are no more recent back x[-]rays or MRI's in file. Claimant is given a light physical rfc only from 11/08/06 to present. Initial and reconsideration decisions affirmed as written to 11/07/06.

Tr. at 238-39.

C.   *Administrative hearing*

At the administrative hearing on February 20, 2009, Donahue testified that her back problems were the result of a sprain at work followed by an automobile accident. Tr. at 346. She described her pain as stabbing pain from her mid back down through her lower back and into her hips. Tr. at 348. According to Donahue, her pain grew worse over time. Tr. at 349. Treatments for back pain included medication, facet injections, a TENS unit, and physical therapy. Tr. at 348-49. Donahue also described the symptoms of her restless leg syndrome, which included symptoms in her arms as well as her legs. Donahue testified that if she didn't massage her muscles when they began to bother her, they would "bind up" in cramps. Tr. at 350. Donahue also stated that she was asthmatic but smoked 1/2 a pack to a full pack of cigarettes a day. Tr. at 351. Donahue was on Cymbalta for depression, but she had not been able to get an appointment to see Dr. Carr who was to treat that condition. Tr. at 351-52. According to Donahue, when she is taking her pain medication, her pain is about a six on a ten point scale. Tr. at 354. The pain ranges from 4/10 to 8/10. Tr. at 369-70. She also testified that she uses the TENS unit about four times a day and that this helps draw her attention away from the pain. In general, she described her medication as not very effective and had side effects of dizziness and stomach pain. Tr. at 361. She also

testified that she had a companion dog that she had trained to bring her the inhaler when she was having an asthma attack and that the dog helped with anxiety and depression.  Tr. at 372.

Donahue reported that she could walk up to two blocks at a time and stand up to twenty minutes, then she required a half hour rest before trying to walk or stand again.  Tr. at 363-64.   She also said that she could bend three times an hour and could reach out in front of her but could not reach overhead.  Tr. at 364-65.  She described standing, shopping, walking, sitting too long, using stairs, and lifting as hurting her back.  She stated, however, that she could climb a flight of stairs lift and carry five pounds, push a half-full grocery cart, and had no significant manipulative limitations.  Tr. at 365.  Donahue read, cooked twice a week, wrote letters, washed dishes once a week, and swept and vacuumed twice a week.  Tr. at 365-66.  She denied doing laundry, shopping, gardening, mowing the lawn, meeting with people, or caring for children.  Tr. at 366-67.  She testified to going out once a week to eat.  Tr. at 367-68.  She believed that she could not work with a sit/stand option for more than an hour and a half or two hours before she had to lie down.  Tr. at 370-71.

### III.  Standard for Disability

A claimant is entitled to receive benefits under the Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."

20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  Second,  the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities."  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d)(2000).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

IV.  Summary of Commissioner's Decision

In determining that Donahue is not disabled, the ALJ made the following relevant findings:

3. The claimant has the following severe impairments:  lumbar facet syndrome, asthma, restless leg syndrome, fibromyalgia, headaches, and status post bunionectomy.  The claimant's borderline intellectual functioning is not a severe impairment.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to:  lift and/or carry 10 pounds frequently and 20 pounds occasionally; sit for two hours at one time for a total of six hours in an eight-hour workday; stand and/walk for two hours at one time for a total of six hours in an eight-hour workday; and occasionally stoop.  The claimant must also avoid concentrated fumes.

6. The claimant is capable of performing past relevant work as a cashier and as a general laborer (with the same duties she performed at Marion Industrial Center).  This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2003 through the date of this decision.

Tr. at 19-26.

## V.  Standard of Review

This Court's review is limited to determining whether there is substantial evidence in the record to support the administrative law judge's findings of fact and whether the correct legal standards were applied.  *See Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) ("decision must be affirmed if the administrative law judge's findings and inferences are reasonably drawn from the record or supported by substantial evidence, even if that evidence could support a contrary decision."); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  Substantial evidence has been defined as "[e]vidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance."  *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966); *see also Richardson v. Perales*, 402 U.S. 389 (1971).

VI. Analysis

Donahue alleges that the ALJ erred because the ALJ failed to give proper weight to the opinions of her treating physicians and instead relied on the RFC assessment of non-examining physicians. The Commissioner denies that the ALJ erred.

According to Donahue, Dr. Bains opined that she was disabled, and the ALJ failed to give that opinion appropriate weight, even though the opinion was corroborated by Donahue's pain specialist, Dr. Siddiqui. Instead, according to Donahue, the ALJ relied on an RFC Assessment of Donahue rendered before the disability opinions of Drs. Bains and Siddiqui were in the record. This, Donahue argues, was error. The Commissioner replies that there is no statement of disability from Dr. Siddiqui and that the opinion of Dr. Bains was equivocal, unsupported by objective medical evidence, and given upon a subject reserved for the Commissioner.

The medical opinion of treating physicians should be given greater weight than those of physicians hired by the Commissioner. *Lashley v. Secretary of Health and Human Servs.,* 708 F.2d 1048 (6th Cir. 1983). Medical opinions are statements about the nature and severity of a patient's impairments, including symptoms, diagnosis, prognosis, what a patient can still do despite impairments, and a patient's physical or mental restrictions. 20 C.F.R. § 404.1527(a)(2). This is true, however, only when the treating physician's opinion is based on sufficient objective medical data and is not contradicted by other evidence in the record. 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *Jones v. Secretary of Health and Human Services*, 945 F.2d 1365, 1370 & n.7 (6th Cir. 1991); *Sizemore v. Secretary of Health and Human Services*, 865 F.2d 709, 711-12 (6th Cir. 1988). Where there is insufficient objective data supporting the

11

opinion and there is no explanation of a nexus between the conclusion of disability and physical findings, the factfinder may choose to disregard the treating physician's opinion. *Landsaw v. Secretary of Health and Human Servs.,* 803 F.2d 211, 212 (6th Cir. 1986).  The factfinder must, however, articulate a reason for not according the opinions of a treating physician controlling weight.  *Shelman v. Heckler*, 821 F.2d 316 (6th Cir. 1987).

In the present case, the only statement from a treating physician referencing Donahue as having a disability is the note written by Dr. Bains on a prescription form on July 11, 2006, stating that Donahue "is currently under medical management at this office, and with pain clinic for pain control/rehab with a disability start date of April 12, 2006 to indefinite." Tr. at 261.  This not is not a clear statement that Donahue is disabled within the meaning of the Act.  Indeed, it reads most naturally as saying that Donahue has suffered from disabling pain as of April 12, 2006, with the extent to which pain disables Donahue unspecified.  At best, the statement is ambiguous.  As the note is not a clear statement from a treating physician that Donahue is disabled within th meaning of the Act, the ALJ was not required to explain why he failed to give the statement controlling weight as an opinion from a treating physician that Donahue was completely disabled.

In addition, even if the note could be interpreted as an opinion by a treating physician that Donahue was disabled, the ALJ still would not be required to give that opinion controlling weight.  The opinion references no objective tests or clinical findings as support and does not otherwise explain the basis for the opinion.  Moreover, although Donahue claims that Dr. Bains's opinion is corroborated by Dr. Siddiqui, she

12

does not cite the record to explain where that corroboration might be found.  Thus, even if Dr. Bains's opinion could be interpreted as asserting that Donahue is completely disabled, the failure to state a nexus between the conclusion of disability and any physical findings relieves the ALJ from giving Dr. Bains's opinion controlling weight.

Donahue also mistakenly asserts that the ALJ improperly credited the opinion of a state physician who had not examined Donahue when that physician had not seen the relevant "disability opinions" from Dr. Bains and Dr. Siddiqui.  First, as already discussed, there was no "disability opinion" from Dr. Bains or Dr. Siddiqui.  Second, Donahue has confused the two state agency physicians who completed an RFC Assessment, Dr. Cho and Dr. Salmi.  Dr. Cho rendered his assessment before Dr. Bains wrote his July 11, 2006 note allegedly asserting that Donahue was disabled.  Dr. Salmi assessed Donahue's RFC well after Dr. Bains's note had become part of the record.[1]  The ALJ adopted Dr. Salmi's assessment of Donahue's RFC, not Dr. Cho's.  Indeed, the ALJ rejected Dr. Cho's RFC entirely.  Dr. Cho found that Donahue had no physical limitations.  The ALJ rejected this assessment *and* rejected that portion of Dr. Salmi's assessment which agreed that Donahue had no physical limitations before November 8, 2006.  Rather, the ALJ credited Donahue's assertions as to the start of her limitations and found that her RFC for light work began at the alleged onset of disability, April 1, 2006.[2]  Tr. at 22-23.  Donahue's assertions about the assessments by agency

---

[1] Dr. Salmi completed the RFC Assessment after Donahue's application had been denied initially and upon reconsideration.

[2] The record contains no RFC assessment by Donahue's treating physicians.  The ALJ relied upon a detailed analysis of Donahue's activities, medications, and consistency of self-reports in rejecting her allegations of disability and favoring the assessment of Dr.

physicians and the weight given those assessments by the ALJ are entirely without merit.

Donahue's contention that the ALJ erred because the ALJ failed to give proper weight to the opinions of her treating physicians and instead relied on the RFC assessment of non-examining physicians is not well taken. The opinion of the ALJ, therefore, is supported by substantial evidence.

### VII. Decision

For the reasons set forth above, the opinion of the Commissioner should be AFFIRMED.


Date: October 12, 2010             s/ *Nancy A. Vecchiarelli*
                                   Nancy A. Vecchiarelli
                                   U.S. Magistrate Judge


### **OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111.**

---

Salmi. *See* tr. at 23-26.